UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICHARD CURRAN, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CV-06-104-B-W |
| | ) |
| CAMDEN NATIONAL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR ATTORNEY'S FEES**

Concluding that Camden National Corporation has not satisfied the five-factor test for a fee-shifting award under the Employee Retirement Insurance Security Act (ERISA), the Court denies its motion for award of attorney's fees.

**I.    BACKGROUND**

On September 6, 2006, several trustees of the Bankers' Health Trust (Trust) filed suit against Camden National Corporation (CNC), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty in violation of ERISA, and civil enforcement under ERISA. *Am. Compl.* (Docket # 10).  On February 28, 2007, this Court granted CNC's motions to dismiss, *Order on Def.'s Motions to Dismiss* (Docket # 28), and judgment was entered in favor of CNC on April 5, 2007, *Judgment* (Docket # 29).  On April 27, 2007, CNC filed an application for attorney's fees. *Def.'s Application for Attorneys' Fees and Incorporated Mem. of Law* (Docket # 32) (*Def.'s Mot.*).

## II.     STANDARD OF REVIEW

Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).  The First Circuit has written that, "in an ERISA case, a prevailing plaintiff does not, merely by prevailing, create a presumption that he or she is entitled to a fee-shifting award."  *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 226 (1st Cir. 1996).  Similarly, the First Circuit rejected "the creation of a presumption in favor of prevailing defendants."  *Id.*; *see also Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 258-59 (1st Cir. 1986).

Rather, as both parties agree, in the context of ERISA cases, the Court is to apply a five-factor analysis to determine the appropriateness of an award of attorney's fees to the prevailing party:

> (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions.

*Janeiro v. Urological Surgery Prof'l Ass'n*, 457 F.3d 130, 143 (1st Cir. 2006) (quoting *Cottrill*, 100 F.3d at 225).[1] "This list is illustrative, not exhaustive . . . no single factor is dispositive; and indeed, not every factor in the list must be considered in every case."  *Id.* (internal citation omitted).

As the fourth factor suggests, the more common scenario is where a prevailing plaintiff, often a plan beneficiary, seeks attorney's fees from the losing defendant, an insurer or plan administrator.  *See, e.g., Beauvais v. Citizens Fin. Group, Inc.*, 418 F.

---

[1] The Tenth Circuit formulated the five-factor test in *Eaves v. Penn*, 587 F.2d 453, 465 (10th Cir. 1978).

2

Supp. 2d 22, 33 (D.R.I. 2006) (noting that it "would be a pyrrhic victory, indeed, if [the plaintiff] were awarded the benefits that were improperly denied but was required to pay, from the benefits, the attorney's fees incurred in pursuing the appeal."); *Giroux v. Fortis Benefits Ins. Co.*, 353 F. Supp. 2d 45, 54 (D. Me. 2005); *Black v. Unum Life Ins. Co. of Am.*, 324 F. Supp. 2d 206, 220 (D. Me. 2004) ("Having weighed each of these factors, the Court concludes that an award of attorney's fees is proper in this case and ensures that Plaintiff's victory is not merely a Pyrrhic one."); *Curtin v. Unum Life Ins. Co. of Am.*, 298 F. Supp. 2d 149, 158 (D. Me. 2004). Nevertheless, the "five factor approach allows for award of fees to defendants in proper cases." *See Gray*, 792 F.2d at 258; *Twomey v. Delta Airlines Pilots Pension Plan*, 328 F.3d 27, 33 (1st Cir. 2003) (affirming the district court's application of the five factors in denying an award of attorney's fees, after the defendant prevailed and sought an award of attorney's fees).

### III.  DISCUSSION

Applying the five factors, CNC argues that it is entitled to an award of attorney's fees amounting to $89,814.51.

#### A.  Degree of Culpability or Bad Faith Attributable to the Trust

During this litigation, the Trust argued: (1) that the state law claims for breach of contract and breach of fiduciary duty were not preempted by ERISA; (2) that it was entitled to equitable relief under *Sereboff v. Mid Atlantic Services Inc.*, 126 S. Ct. 1869 (2006); (3) that the Court should extend the duty of good faith and fair dealing under Maine law to the circumstances of this case; and, (4) that the Court could infer that CNC's representative in the Trust, Ms. June Parent, conveyed to CNC certain

3

information about another bank's withdrawal from the Trust, in violation of her fiduciary duty to the Trust.

CNC's claim, refrained throughout the application for attorney's fees, is that the Trust filed its law suit in bad faith:

> The Trust brought meritless claims; they pursued those claims aggressively even though, after CNC's filing of the Motion to Dismiss and subsequent motions, the Trust could not have held a good faith belief in the merits of its case; they persistently tried to rescue their claim suggesting matters which they could not, in good faith, actually allege in the Complaint; and, lastly, they knew before filing the lawsuit that the Plan was flush with surplus funds that largely resulted from CNC's past contributions, but nonetheless the Trust pursued groundless claims in an effort to extract an additional $525,600 from CNC.

*Def.'s Mot.* at 10. CNC further supports its claim of bad faith, asserting that the Court "determined in its Order of February 28, 2007, that, as a matter of law, the Trust's claims lacked merit and were unsustainable." *Id*.

In response, the Trust takes issue with CNC's characterizations, arguing that its lawsuit was not a hopeless cause. *Pls.' Mem. in Opp'n to Defs.' Application for Attorney Fees* at 2 (Docket # 35) (*Pls.' Opp'n*). First, it argues that "there has been considerable uncertainty as to what to make of" the *Sereboff* issue.[2] Next, it claims that the ERISA preemption issues were not clear-cut, as evidenced by the amount of time spent by counsel for CNC researching the issue. On the issue of the duty of good faith and fair dealing, the Trust asserts that it was merely advocating an extension of Maine law to include the circumstances in this case.

---

[2] The Trust also points to the First Circuit's brief reference in *Green v. ExxonMobil Corp.*, 470 F.3d 415 (1st Cir. 2006), in which the court wrote: "Also in dispute is what forms of relief can be 'equitable.' *See, e.g., Sereboff v. Mid Atlantic Servs. Inc.*, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006)." *Id*. at 421 n.7.

On this prong of the analysis, the Court is unconvinced by CNC's arguments. After a legal victory, with the passage of time, it is human nature for the victor to view the result as inevitable; success is a necessary, but not a sufficient basis for a bad faith claim. None of the legal issues was as patently clear-cut as CNC would have them be. The issues provoked a twenty-seven page discussion and, notwithstanding the outcome, the Court concludes that the Trust advanced its arguments in good faith.

### B. Ability to Pay

Under this prong, CNC argues that the Trust has ample means with which to reimburse CNC's attorney's fees. *Def.'s Mot.* at 14 ("[T]he Trust has more than enough money to pay attorneys' fees using CNC's premium contributions without exhausting the surplus or impacting its ability to protect beneficiaries."). The Trust counters by citing *Janeiro*, which holds: "'An inability to afford attorneys' fees may counsel against an award, but the capacity to pay, by itself, does not justify an award.'" 457 F.3d at 144 (quoting *Cottrill*, 100 F.3d at 227). Although the Trust may have the assets with which to pay an award of attorney's fees, this factor standing alone does not justify an award.

### C. Deterrence

The next prong asks whether an award of attorney's fees would deter others acting in similar circumstances. On this factor, CNC states simply: "The entry of an award of attorney's fees in this case would send a strong signal to other ERISA plans that this type of behavior will not be tolerated in this District, including the attempts to besmirch the reputation of June Parent as part of a campaign to extract money from CNC." *Def.'s Mot.* at 14. The Trust claims that it did not actually allege wrongdoing by Ms. Parent, but only asked the Court to infer such wrongdoing. *Pls.' Opp'n* at 5. The

5

consideration here is whether the awarding of attorney's fees would deter other individuals from similar conduct. It is difficult to draw any logical nexus between awarding CNC its attorney's fees and deterring others from asking another court to make adverse inferences against June Parent.

### D. Benefit that the Successful Suit Confers on Plan Participants or Beneficiaries in General

Here, CNC argues that the "successful defense of this lawsuit has provided remaining plan participants and employers with clarity concerning the true meaning of the plan documents that have now been construed by the Court." *Def.'s Mot*. at 14. The Trust counters that this factor is not applicable, because the "only persons conceivably 'benefited' by the Court's clarification of CNC's rights and obligations *vis-à-vis* the Trust under the plan documents are the Trust's remaining participating employers, none of which is a plan participant or beneficiary." *Pls.' Opp'n* at 6. If there is some generalized benefit to the clarification of the language of the plan documents, it is insufficient to justify a fee award.

### E. The Relative Merits of the Parties' Positions

Although this last factor is largely subsumed by the first, CNC argues that this Court's Order "conclusively demonstrates that the Trust's position was unsustainable and that Defendant CNC was correct as a matter of law." *Def.'s Mot*. at 15. The Trust does not make an argument under this factor, resting on its previous arguments.

CNC reads too much into the Court's decision to grant its Rule 12(b)(6) motion to dismiss. The rule exists to dispose of cases that do not state a claim upon which relief may be granted. *See* 5B C.A. WRIGHT & A.R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1356 ("[T]he purpose of a motion under Federal Rule 12(b)(6) is to test the

6

formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."). The mere fact that a court grants a defendant's motion under Rule 12(b)(6) does not entitle that party to attorney's fees. To do so would discourage parties from bringing meritorious claims by instilling the fear that if they fail to survive at the Rule 12(b)(6) stage, they could be ordered to pay the defendant's attorney's fees.

Finally, this is not the type of Pyrrhic victory that courts have warned against. Where attorney's fees have been awarded, a plan beneficiary often stands to lose more money than he gained by winning, since his receipt of modest benefits is more than offset by his legal bills. Here, by successfully defending this lawsuit, CNC avoided paying the Trust's bill in the amount of $525,000.

## IV. CONCLUSION

The Court DENIES CNC's motion for attorney's fees (Docket # 32).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of July, 2007